# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSSEE
### NASHVILLE DIVISION

LORI McMURTRY,        )
           )
        Plaintiff,      )
           )
v.                            )         **NO: 3:10-cv-345**
           )         **JUDGE HAYNES**
JOHN ACTON, individually,     )         **JURY DEMAND**
           )
        Defendant.     )

## CASE MANAGEMENT ORDER No. 1

### I.    Jurisdiction and Venue

Jurisdiction and venue are not in dispute.

### II.    Parties' Theories of the Case

#### 1.    Plaintiff's Theory of the Case

On December 15, 2009, McMurtry was attending a High School basketball game at Smyrna High School in Rutherford County, Tennessee. Her son played on the visiting team from Wilson Central High School.

At the same time, Acton was working at the High School as a Rutherford County Sheriff's Department School Resource Officer [SRO], assigned to Smyrna High School.

During the last four or five minutes of the game, McMurtry, who had been sitting in the Visitor Section of the gym, was summoned to come to the Student Section by several students. The students complained to her that several parents of Smyrna students had pushed their way into the Wilson Central Student Section and were making them feel uncomfortable.

McMurtry approached another SRO officer, Dustin Cox, and asked him why he had allowed these adults to move into the middle of the Wilson Central Student Section. Cox told her it was "a free country and they could sit wherever they wanted." McMurtry then went back to her seat.

After the game was over, McMurtry proceeded to check on the Wilson Central students who had first approached her. As she walked towards the children she saw a gentleman dressed in a suit and asked if he was the principal of Smyrna High School. He replied that he was. McMurtry complained to him about the behavior of the Smyrna parents. The principal told her the Smyrna parents had a right to be there and walked away.

Ms. McMurtry then joined some other Wilson Central parents. The parents told her that one of the SROs had had an altercation with one of the Wilson Central parents earlier. That SRO was Defendant Acton. McMurtry asked the parent to point out which SRO she had been arguing with. The parent pointed to Acton.

At that point, Acton motioned for McMurtry and the other parent to come to him. Acton told McMurtry and the other parent the Wilson Central students were in the wrong place. McMurtry then told Acton that she wanted his name because she felt the incident needed to be reported.

At this point, Acton became enraged and began screaming at McMurtry. Acton ordered her to get out of the gym. McMurtry became afraid and turned away from him and began to look for her husband. Acton then told her she was going to jail. Acton then grabbed McMurtry's arm and began shaking her and bent her arm around her back causing her pain and fear.

Acton then handcuffed McMurtry and dragged her into a small office. McMurtry was not free to leave. He then began screaming at her. McMurtry's husband and others persons, including another SRO, were in the room.

After a few minutes, Acton calmed down and then released McMurtry.

The actions of Acton heretofore set forth constitute an arrest of McMurtry without the benefit of probable cause in violation of the Fourth Amendment to the United States Constitution. McMurtry had committed no crime, was not causing a disturbance, and was not a danger to Acton. Yet, he placed her under arrest and restrained her liberty even though she had committed no crime.

During his illegal seizure of McMurtry, Acton unnecessarily stretched McMurtry's arms behind her back and jerked her body around even though she was offering no resistance to his seizure. In the process he bruised her arms, one of which had been in the past broken in five places. This force was unnecessary and excessive and constituted excessive force use by a law enforcement officer in violation of the Fourth Amendment to the United States Constitution.

As a direct and proximate result of the actions of Acton heretofore described in this Complaint, McMurtry suffered great emotional distress, humiliation and embarrassment, and great physical pain, as well as loss of freedom.

2. **Defendant's Theory of the Case**

The defendant is a Rutherford County Student Resource Officer (SRO) at Smyrna High School. On December 15, 2009, the defendant was working at a varsity basketball game between Smyrna High School and Wilson Central High School. The game was being played at Smyrna High School.

At the end of the basketball game, the defendant was approached by two women who were upset over an incident that occurred in the bleachers in the gymnasium. The two women were yelling at the defendant. The defendant continually advised both women that they needed to leave the gym. They refused to leave and a crowd began to gather around the defendant and the women. The gathering crowd became hostile towards the officer as the two women continued to yell at the defendant. The defendant handcuffed the plaintiff. The plaintiff struggled with the defendant while he was attempting to cuff her. The plaintiff was subsequently escorted to an office in the gym to remove her from the growing hostile crowd. While in the gym office, the crowd left and the defendant calmed down. Once all of the parties calmed down, and the crowd left, the defendant released the plaintiff.

The defendant was performing his duties as a Rutherford County Sheriff's Deputy and is immune from suit in his individual capacity. The defendant was lawfully entitled to take the action that he did pursuant to T.C.A. §39-11-603. Should the Court, or trier of fact, determine that the plaintiff was seized, the seizure was based upon reasonable suspicion that the plaintiff committed a criminal offense. Moreover, should the Court, or trier of fact, determine that the plaintiff was arrested, the arrest was based upon probable cause that the plaintiff committed a criminal offense.

III.     **Schedule of Pretrial Proceedings**

    A.     **Rule26(a)(1) Disclosure**

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within thirty (30) days from the date of the initial case management conference.

**B. Meeting of Counsel and Parties to Discuss Settlement Prospects**

Ninety (90) days from the date of the initial case management conference, counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter.

**C. Other Pretrial Discovery Matters**

As determined at the case management conference on **Thursday, June 24, 2010**, **at 1:00 p.m.,** this action is set for a jury trial on July 26, 2011, at 9:00 a.m.

If this action is to be settled, the Law Clerk shall be notified by noon, July 22, 2011. If the settlement is reached thereafter resulting in the non-utilization of jurors, the costs of summoning jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held July 11, 2011, at 3:00 p.m. A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed by the close of business on **January 3, 2011**. All written discovery shall be submitted in sufficient time so that the response shall be in hand by **January 3, 2011**. All discovery related motions shall be filed by the close of business on **January 12, 2011**. No motions related to discovery or for a protective order shall be filed until a

5

discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions[1] shall be filed by the close of business on **March 12, 2011**, and any response thereto shall be filed by the close of business on **April 13, 2011**.  Any reply shall be filed by the close of business on **April 20, 2011**.[2]

Any motion to amend the pleadings or join parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the time for discovery.  No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motions.

The response time for all written discovery and requests for admissions is reduced from thirty (30) to twenty (20) days.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to sixty (60) such interrogatories.  Subparts of a question shall be counted as additional questions for purposes of the overall number.  In all other respects, Rule 33.01, Local Rules of Court shall govern.

---

[1] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages.  No reply shall be filed to any response unless invited by the Court.
[2] Strict compliance is required to Rule 56.01, Local Rules of Court relating to motions for summary judgment.

6

By the close of business on **February 12, 2011**, the plaintiff shall declare to the defendants (<u>not</u> to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

By the close of business on **March 3, 2011**, the defendants shall declare to the plaintiff (<u>not</u> to file with the Court) the identity of their expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

Any supplements to expert reports shall be filed by the close of business on **April 12, 2011**. There shall not be any rebuttal expert witnesses.

In order to reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses.

Local Rule 39(c)(6)(c) relating to expert witnesses shall apply in this action, and strict compliance is required.

It is so **ORDERED**.

**Entered** this 24th day of June, 2010.


*s/ John S. Bryant*
————————————————
JOHN BRYANT
Magistrate Judge